UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| NATIONAL CITY MORTGAGE CO. d/b/a ACCUBANC MORTGAGE | CIVIL ACTION NO. 06-0582 |
| versus | JUDGE HICKS |
| FIRST CONTINENTAL MORTGAGE, L.L.C. | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Plaintiff National City Mortgage Co., an Ohio corporation, filed suit against Defendant First Continental Mortgage, L.L.C., a Louisiana limited liability company, asserting state law claims for breach of contract, negligent misrepresentation, breach of fiduciary duty and unjust enrichment. Plaintiff asserts that federal jurisdiction in this matter is based upon diversity jurisdiction under 28 U.S.C. § 1332(a). Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion") on the grounds that the amount in controversy does not exceed $75,000. It is recommended, for the reasons that follow, that the Motion be **granted**, and that the complaint be dismissed without prejudice.

**Background Facts**

In 2001, Plaintiff and Defendant entered into a Correspondent/Broker Mortgage Loan Purchase Agreement (the "Agreement"), which provides in relevant part:

> From time to time, the SELLER [Defendant] intends to enter into binding commitments for the sale at a future date of Federal Housing Administration (FHA) insured, Veteran's Administration (VA) guaranteed and Conventional Mortgage Loans. Each loan shall be sold servicing released to ACCUBANC [Plaintiff] and SELLER hereby agrees that the following terms and conditions will govern and form a part of all such commitments unless specifically altered or modified in writing, approved and signed by ACCUBANC and SELLER.

(Complaint, Ex. A, p. 1). Defendant states, and Plaintiff has not denied, that Defendant never sold any loans to Plaintiff pursuant to the Agreement. However, Defendant did originate and broker a number of loans that Plaintiff made to customers. The parties dispute whether such transactions fall under the terms of the Agreement.

In September 2002, Plaintiff made a loan to a customer named Carmelita Robinson. Defendant, which originated and brokered the loan, obtained information from Robinson concerning her employment, income and credit history. The loan was in the principal amount of $70,810.00, and Plaintiff received a mortgage on the home Robinson acquired at 2704 West Cavett Drive, Shreveport, Louisiana. Plaintiff purchased a private mortgage insurance policy on the Robinson loan from Republic Mortgage Insurance Company ("Republic"). This policy would be voided by any material misrepresentation in Robinson's loan application. Plaintiff then sold the loan to Fannie Mae, a third party investor.

Robinson quickly defaulted on the loan. Plaintiff initiated a foreclosure proceeding in the First Judicial District Court, Parish of Caddo, and purchased the property at public auction, on behalf of Fannie Mae, for $46,666.67. Plaintiff was required to indemnify Fannie Mae for its losses on the Robinson loan. Plaintiff then filed a claim with Republic under the

mortgage policy. Republic responded that the policy was void because Robinson's loan application included fraudulent employment, income and credit history information. Republic advised Plaintiff that "it appears that some or all of these misrepresentations were knowingly participated in by agents of the loan broker who processed and packaged this loan for submission to the Insured." (Affidavit of Kirk Bockoven, Ex. C, p. 2). Plaintiff also claims that it has independently gathered evidence indicating that Defendant intentionally misrepresented the state of Robinson's financial affairs.

Plaintiff sent a letter to Defendant demanding reimbursement in the amount of $29,220.00 for its alleged losses on the Robinson loan. Defendant responded by denying any liability. In February 2005, Defendant filed a declaratory judgment action concerning this dispute in the First Judicial District Court, Parish of Caddo. Then, in April 2006, Plaintiff filed this civil action. Plaintiff's Complaint asserts that "the matter in controversy exceeds the sum or value of $75,000.00." (Complaint, p. 1). As Defendant points out, Plaintiff does not plead a specific amount of damages in the Complaint. In its Memorandum in Opposition to the Motion, Plaintiff specifies its damages as follows:

| Nature of Damages | Amount (in $) |
|---|---|
| Indemnification paid to Fannie Mae | 31,599.73 |
| Mortgage broker fee paid to Defendant | 1,387.00 |
| Expected servicing fees over duration of loan | 3,621.97 |
| Costs of investigation | 800.00 |
| Attorney's fees in declaratory judgment action | 32,913.50 |

| | |
|---|---|
| Costs in declaratory judgment action | 898.30 |
| Attorney's fees and costs thus far in this action | 5,117.25 |
| Future attorney's fees and costs in this action | 53,500.00 |
| <u>Total attorney's fees and costs</u> | 93,229.05 |
| <u>Total excluding attorney's fees and costs</u> | 36,608.70 |
| <u>Absolute total</u> | 129,837.75 |

As the above table demonstrates, substantial attorney's fees must be included in Plaintiff's alleged damages in order to exceed the $75,000.00 jurisdictional minimum. Although Plaintiff does not clearly distinguish between attorney's fees, attorney's costs and other costs, it can be conservatively estimated that Plaintiff is claiming attorney's fees of approximately $90,000.00. Defendant contends that such attorney's fees should not be allowed because they are unreasonable, are not provided for in the Agreement and are contrary to Ohio law. If any of these contentions are true, then the Court lacks diversity jurisdiction over this matter.

**Standard of Review**

For the purposes of determining diversity jurisdiction, the amount in controversy is a federal question to be decided under federal standards. Horton v. Liberty Mut. Ins. Co., 81 S.Ct. 1570, 1573 (1961). Plaintiff bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908 (5th Cir. 2002). "An allegation in the complaint of the requisite amount will normally suffice to confer jurisdiction upon the court if the claim is made in

good faith and unless it appears to a legal certainty that the claim cannot be satisfied... However, if the plaintiff's allegation of jurisdictional amount is challenged in an appropriate manner by the defendant, the plaintiff must support the allegation by competent proof." Lister v. Commissioners Court, Navarro County, 566 F.2d 490 (5th Cir. 1978).

A bare allegation that the claim exceeds the minimum jurisdictional amount does not suffice to confer federal jurisdiction. St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998). If it is not "facially apparent" that the jurisdictional minimum has been reached, the court may consider "summary judgment-type" evidence to ascertain the amount in controversy. Id. The court must look to state law to determine the nature and extent of the right that Plaintiff seeks to enforce. Horton, supra. Plaintiff asserts, and Defendant does not dispute, that the Agreement is governed by Ohio law.

**The Terms of the Agreement**

The parties dispute whether the terms of the Agreement render Defendant liable for Plaintiff's attorney's fees. Pursuant to Section 13(F), the Agreement is to be "construed and governed by the laws of the state of Ohio." Ohio follows the general "American rule" that the prevailing party is not entitled to recover attorney's fees absent statutory or enforceable contractual authorization. Sorin v. Board of Ed. of Warrensville Heights School Dist., 347 N.E.2d 527, 528-529 (Ohio 1976); Nottingdale Homeowners' Ass'n, Inc. v. Darby, 514 N.E.2d 702, 704 (Ohio 1987). Plaintiff does not contend that any Ohio statutes explicitly permit the recovery of attorney's fees in this case. Instead, Plaintiff relies upon Section 4(A)

of the Agreement to establish its claim for attorney's fees. That provision, the only clause in the Agreement that refers to attorney's fees, states as follows:

> 4. REPURCHASE AGREEMENT
>
> A.  If a loan is tainted in any way by fraud, misrepresentation, or defects, or fails to meet the SELLER's [Defendant's] representations, warranties, or covenants in this Agreement, SELLER shall repurchase said loan within ten (10) business days of written notice from ACCUBANC [Plaintiff] at a repurchase price equal to the par price paid by ACCUBANC plus any interest, late charge, advances, premiums, service released premiums, and any loss or expense, including any reasonable attorney fees, which ACCUBANC shall incur as a result of this loan.

(Complaint, Ex. A, p. 3). Plaintiff does not claim that it ever required Defendant to repurchase the Robinson loan pursuant to this provision. Rather, Plaintiff contends that this clause requires Defendant to pay any reasonable attorney's fees that Plaintiff has incurred or will incur as a result of the Robinson loan if that loan is tainted by fraud, misrepresentation, or defects. For the purposes of evaluating Plaintiff's argument, it can be assumed that the Robinson loan was tainted by misrepresentation within the meaning of this provision. Plaintiff also contends that the repurchase clause provides for an election of remedies, and that the waiver of its right to demand repurchase does not preclude its right to collect attorney's fees.

Defendant argues that the repurchase clause simply establishes the price at which a loan must be repurchased – if it has been sold to Plaintiff – and does not provide for the payment of attorney's fees in any other circumstances. Defendant also claims that the provision is retroactive with regard to attorney's fees and only requires the payment of

attorney's fees incurred prior to the request for repurchase.

Plaintiff's position is not supported by the language of the provision. The repurchase clause, in relevant part, does not provide Plaintiff with multiple remedies. The clause merely states that, in the event of fraud, misrepresentation, defect, or other breach of warranty, Plaintiff shall have the right to require Defendant to repurchase the loan at a price which includes, among other things, "any reasonable attorney fees, which [Plaintiff] shall incur as a result of this loan." The word "shall" casts doubt upon Defendant's argument that the provision is only retroactive, but that is an issue the court need to resolve. The repurchase clause refers to attorney's fees only as a component of the repurchase price. Because there was no sale of a loan under the Agreement from Plaintiff to Defendant, there was no "par price" paid by Plaintiff, and there is no "repurchase price," so Plaintiff cannot use Section 4(A) to claim attorney's fees.

The Agreement contemplates that Defendant will advance the principal amount of a mortgage loan to the borrower and become the "sole owner" of the mortgage loan. Plaintiff will then purchase the mortgage loan from Defendant for a price that is published daily. If the loan is tainted, Plaintiff may demand that Defendant "repurchase" the loan at the par price, plus interest and other costs, including reasonable attorney fees. Defendant offers uncontested testimony that the loan at issue was not sold under the terms of the Agreement. Rather, Plaintiff funded the loan itself. Defendant received a brokerage fee for its role, but Defendant did not own the loan, sell it to Plaintiff or receive a par price for it. See Affidavit

of Barry Fisher at Doc. 20, Exhibit G.

The language of the repurchase clause of the Agreement is unambiguous. However, even if the clause were reasonably susceptible to more than one interpretation, under Ohio law ambiguous language is construed against the party that prepared the contract. <u>Mead Corp. v. ABB Power Generation, Inc.</u>, 319 F.3d 790, 797 (6th Cir. 2003). It is undisputed that the Agreement was prepared by Plaintiff. Thus, any doubt on this issue must be resolved in favor of Defendant. Plaintiff lacks any basis to claim attorney's fees in this case, and the amount in controversy therefore does not meet the jurisdictional minimum.

**Fee-Shifting Provisions Under Ohio Law**

Even if the Agreement contained a clause requiring Defendant to pay Plaintiff's attorney's fees, such a provision would not be enforceable under Ohio law. Ohio courts have traditionally considered contractual fee-shifting provisions unenforceable because they encourage needless litigation and are thus contrary to public policy. <u>Miller v. Kyle,</u> 85 Ohio St. 186, 97 N.E. 372 (Ohio 1911); <u>Clarklift of Northwest Ohio, Inc. v. Clark Equipment Co.</u>, 869 F.Supp. 533, 535 (N.D. Ohio 1994). However, the Supreme Court of Ohio has carved out exceptions to this traditional rule. <u>Worth v. Aetna Cas. & Sur. Co.</u>, 513 N.E.2d 253 (Ohio 1987), <u>Nottingdale Homeowners' Ass'n, Inc.</u>, <u>supra</u> at 707. Under current Ohio practice, fee-shifting provisions are only enforceable if the parties had equal bargaining power when they entered into the contract. <u>RB-3 Associates v. M.A. Bruder & Sons, Inc.</u>, 1996 WL 1609231 (S.D.Ohio 1996); <u>New Market Acquisitions, Ltd. v. Powerhouse Gym</u>,

154 F.Supp.2d 1213 (S.D.Ohio 2001). In determining whether the parties had equal bargaining power, the court should consider the size and sophistication of the parties as well as whether both parties were represented by counsel when the contract was being drafted. RB-3 Associates, supra at 7. Fee-shifting provisions are only enforceable "when, upon consideration of the underlying circumstances, the agreement to pay the fees can fairly be said to be the product of a free and understanding negotiation... between parties of equal bargaining power and similar sophistication." Vermeer of S. Ohio, Inc. v. Argo Constr. Co., 760 N.E.2d 1, 6 (Ohio App. 1 Dist. 2001)(internal quotation marks omitted). One Ohio appellate court has ruled that a fee-shifting provision contained within a standard, fill-in-the-blanks contract provided by the advantaged party is not enforceable, even when the parties are equally sophisticated. Id.

Defendant argues that it was not in an equal bargaining position and, therefore, that any fee-shifting clause in the Agreement would be unenforceable. Defendant does not claim that it is smaller or less sophisticated than Plaintiff. However, Defendant does contend that its counsel did not have any input in drafting the Agreement and that the Agreement was a standard, fill-in-the-blanks contract provided by Plaintiff. Plaintiff asserts that the parties had equal bargaining power (Plaintiff's Memorandum in Opposition, p. 9) but does not elaborate on this claim or articulate any facts to support it. Plaintiff also does not dispute Defendant's reasons why the parties had unequal bargaining power. Plaintiff has the burden of proving that the amount in controversy meets the jurisdictional minimum, and it has failed to prove

that it has a means of reaching that minimum amount under Ohio law.

**Reasonableness of Attorney's Fees**

Federal courts sitting in diversity in Louisiana may inquire into the reasonableness of contractual attorney's fees. Fourchon Docks, Inc. v. Milchem Inc., 849 F.2d 1561 (5th Cir. 1988); Bank of America Nat. Trust v. Reeves, 1997 WL 537691, *10 (E.D. La. 1997). The attorney's fees that Plaintiff seeks are quite high, totaling approximately $90,000. However, because Plaintiff's claim, excluding attorney's fees and costs, allegedly totals $36,608.70, Plaintiff only needs fees and costs of $38,391.30 to reach the jurisdictional minimum of $75,000.00. If costs are removed from this total, it can be conservatively estimated that attorney's fees of at least $35,000.00 are required. Such fees would certainly be high. However, because Plaintiff is not entitled to recover any attorney's fees for the reasons outlined above, it is not necessary to determine whether such fees would be unreasonable.

Accordingly,

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be **granted** and that the complaint be **dismissed without prejudice**. It is not necessary to address the other arguments raised by the parties.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996)(en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 28th day of August, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE